UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JODY WILLIAMS,

        Movant,

                                                    File No. 2:13-cv-143

v.

                                                    HON. ROBERT HOLMES BELL

UNITED STATES OF AMERICA,

        Respondent.
                                               /

**OPINION**

        Pending before this Court is Movant Jody Williams's pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him (Dkt. No. 1). The government filed a response to this motion (Dkt. No. 20) and Movant's trial counsel filed an affidavit (Dkt. No. 14). Movant has filed a reply (Dkt. No. 22). The Court has carefully considered the arguments presented, and for the reasons that follow, the Court denies the § 2255 motion and issues this Opinion, Final Order, and Judgment. *See* Rules Governing § 2255 Cases, Rule 11 (referring to the order disposing of a habeas petition as a "final order").

**I.**

        On August 24, 2010, a grand jury returned a superseding indictment (No. 1:10-CR-20, Dkt. No. 34) charging Movant with one count of conspiracy to possess with intent to distribute 100 g or more of marijuana, a Schedule I controlled substance. Movant signed a plea agreement, pleading guilty to the conspiracy count in exchange for the government's promise not to oppose a two-point reduction in Movant's offense level for acceptance of responsibility. (No. 1:10-CR-20, Dkt. No. 95.) Movant was represented at the trial and appellate level by Attorney Michael Manning (Manning).

A change of plea hearing was held before Magistrate Judge Timothy Greeley on December 16, 2010. Judge Greeley issued a Report and Recommendation (R&R) the same day, finding that Movant was "fully capable and competent to enter an informed plea," "that the plea is made knowingly and with full understanding of each of the rights waived," and "that it is made voluntarily and free from any . . . promises, apart from the promises in the plea agreement." (R&R, No. 1:10-CR-20, Dkt. No. 99.) This Court issued an order approving and adopting the R&R on January 25, 2011. (No. 1:10-CR-20, Dkt. No. 113.)

Movant filed a sentencing memorandum raising four objections to the Final Presentence Report: (1) requesting a downward departure of the enhancement for his leadership role in the offense; (2) objecting to a gun enhancement; (3) requesting a departure for the nature of his criminal history; and (4) requesting a variance because research suggests that marijuana should no longer be considered a Schedule I drug. (No. 1:10-CR-20, Dkt. No. 122.) At sentencing Movant's counsel withdrew his gun- and marijuana-based objections.

The Court discussed each of Movant's requests for variances and downward departures. The Court first noted that a three-level enhancement for leadership, as suggested by the PSR, was too severe given Movant's actual role in the conspiracy. The Court found, however, that Movant committed acts in furtherance of the conspiracy that would require some leadership, and assigned a two-level enhancement. The Court denied the departure related to criminal history citing Movant's long history of run-ins with the law for a variety of offenses. The Court also noted that marijuana is a gateway drug, and that it could not entertain a departure based on its burgeoning quasi-legal status.

The Court sentenced Movant to 100 months in custody and 5 years of supervised release, the

bottom end of the guidelines range. Movant appealed his sentence, arguing that the Court abused its discretion by denying a motion to continue sentencing until after his co-defendants were sentenced, denying a downward departure for the seriousness of his criminal history, and denying a downward variance on the basis that marijuana should not be classified as a Schedule I drug.

Movant's appeal was denied on July 13, 2012. Movant's time to petition the Supreme Court of the United States for a writ of certiorari therefore expired on October 11, 2012. Movant filed his timely motion to vacate his sentence on April 18, 2013. Movant raises seven grounds for relief, all couched as ineffective assistance of counsel, in his brief: (1) counsel had an actual conflict of interest; (2) counsel failed to properly argue the leadership enhancement; (3) counsel failed to petition for a downward departure based on cooperation; (4) counsel failed to inform the Court of a mitigating factor that caused him to enter the conspiracy; (5) counsel failed to suppress evidence related to the gun enhancement; (6) counsel was ineffective in Movant's appeal; and (7) counsel defrauded the Court by violating the Criminal Justice Act. (Br., Dkt. No. 7 at 4–5.)

## II.

**A.    Motion Standards**

A prisoner who moves to vacate his sentence under 28 U.S.C. § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, the movant must demonstrate "the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United*

*States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

The general rule is that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Claims of ineffective assistance of counsel are an exception to this general rule. Claims of ineffective assistance of counsel "are more properly available in a post-conviction proceeding under 28 U.S.C. § 2255, after the parties have had the opportunity to develop an adequate record on the issue from which the reviewing court is capable of arriving at an informed decision." *United States v. Williams*, 612 F.3d 500, 508 (6th Cir. 2010) (quoting *United States v. Rahal*, 191 F.3d 642, 645 (6th Cir. 1999)).

However, "[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances" *DuPont v. United States,* 76 F.3d 108, 110 (6th Cir. 1996) (internal citations and quotation marks omitted), or "an intervening change in the case law." *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999).

In an action to vacate or correct a sentence, a court is generally required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No evidentiary hearing is required if Movant's allegations "cannot be accepted

as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Cases, Rule 4(b). Where the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). The files and records in this case conclusively show that Movant is not entitled to relief under 28 U.S.C. § 2255. Accordingly, no evidentiary hearing is required to resolve the merits of the pending motion.

**B.     Ineffective Assistance of Trial Counsel**

To establish ineffective assistance of counsel, Movant must show both deficient performance by his counsel and prejudice resulting therefrom. See *Premo v. Moore*, ___ U.S. ___, 131 S. Ct. 733, 739 (2011) (citing *Knowles v. Mirzayance*, 566 U.S. 111 (2009)). To establish deficient performance, Movant must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 131 S. Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689). Movant's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See id.* (quoting *Strickland*, 466 U.S. at 687).

Even if Movant can successfully show his counsel's performance was deficient, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a

5

criminal proceeding if the error had no effect on the judgment." *See Strickland*, 466 U.S. at 691. Therefore, Movant must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)); *see also Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).

The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Movant to meet because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *See Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001) (quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc)). As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim de novo, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740.

Movant's first five grounds for relief fall generally under the umbrella of ineffective assistance of trial counsel. For the reasons that follow, with respect to each claim, Movant has failed to show that his counsel either performed deficiently or that he was prejudiced by counsel's performance. Movant is therefore entitled to no relief on these grounds.

1.  <u>Conflict of Interest</u>

Movant argues that his counsel "breached the duty of loyalty," (Br., Dkt. No. 7 at 5), because he represented Andrew Kobasic, an unindicted co-conspirator, in an unrelated state court marijuana

6

case. (*Id.* at 6.) Movant argues that this prior representation, along with the representation by his counsel of his co-defendant Nathan Kobasic "shows that Manning is entwined into the Kobasic family from various angles." (*Id.* at 7.) Manning attempted to get the U.S. Attorney's office to file a Rule 35 motion on behalf of Movant and Nathan Kobasic for their cooperation, but the U.S. Attorney only filed one on Kobasic's behalf. (*Id.* at 7–9.) Movant states, "Who did Nathan Kobasic proffer on? Based on information obtained by [Movant] his testimony was on Pedro Kobasic and [Movant]. How can Manning represent a client ([Movant]), continue to represent him and then represent the person (Kobasic) who helped the Government get their conviction [against Movant]." (*Id.* at 9–10.) Movant concludes that "it must be fact that Nathan [Kobasic] obtained his reduction by assisting the Government on [Movant]." (*Id.*)

In certain circumstances, the Court will "discharge the defendant's *Strickland* obligation to demonstrate a probable effect on the outcome and instead presume . . . prejudice." *Moss v. United States*, 323 F.3d 445, 455 (6th Cir. 2003) (citing *Mickens v. Taylor*, 565 U.S. 162, 166 (2002)). One such circumstance is where "the defendant demonstrates that his attorney actively represented conflicted interests." *Id.* (citing *Mickens*, 565 U.S. at 166–74 (examining cases)). On collateral review, when a movant has entered a guilty plea, in order to prevail he must show "'(1) that there was an actual conflict of interest; and (2) that the conflict adversely affected the voluntary nature of the guilty plea entered by [Movant].'" *Moss*, 323 F.3d at 467 (quoting *Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir. 1987)); *see also Jalowiec v. Bradshaw*, 657 F.3d 293, 314 (6th Cir. 2011) (holding that a movant must show that his counsel "actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance.") (internal citations and quotations omitted).

7

To show actual conflict, a movant must "'point to specific instances in the record to suggest an actual conflict or impairment of [his] interests.'" *McElrath v. Simpson*, 595 F.3d 624, 631–32 (6th Cir. 2010) (quoting *United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir.2000)). However a conflict "as to a matter that is irrelevant" or one that is "merely hypothetical" does not implicate the Sixth Amendment. *Moss*, 323 F.3d at 464. Adverse effect is shown by "'demonstrat[ing] that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other.'" *McElrath*, 595 F.3d at 631–32 (internal citations omitted).

A conflict of interest can arise when an attorney represents parties concurrently or in succession. Concurrent, also called joint, representation of co-defendants is not per se ineffective assistance of counsel. *Id.* at 455 (citing *Thomas*, 818 F.2d at 481). It is, however, "suspect because of what it tends to prevent the attorney from doing." *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978). The Sixth Circuit has held that such representation constitutes ineffective assistance of counsel "where joint representation compels the attorney to forgo plea negotiations on one client's behalf." *Moss*, 323 F.3d at 456 (citing *Hall*, 200 F.3d at 966).

Successive representation "occurs where defense counsel has previously represented a co-defendant or trial witness." *Id.* at 459. In cases of successive representation "it is more difficult for a defendant to show that counsel actively represented conflicting interests." *Id.* "Thus, the most common example of an actual conflict of interest arising from successive representation occurs where an attorney's former client serves as a government witness against the attorney's current client at trial." *Id.* at 460. Importantly, "prejudice is not presumed in a successive-representation case unless it is an 'atypical form of successive representation' where the facts more closely resemble

8

a concurrent-representation case." *United States v. Taylor*, 489 F. App'x 34, 41 (6th Cir. 2012).

Movant has failed to show an actual conflict with respect to Manning's representation of either Andrew or Nathan Kobasic. Manning represented Andrew Kobasic on a state-law marijuana charge. There is no dispute that this representation ended prior to Manning's representation of Movant. Thus, Movant would have to show that Manning's representation of him and Andrew Kobasic amounted to successive representation. As stated above, successive representation occurs when "counsel has previously represented a co-defendant or trial witness." *Moss*, 323 F.3d at 459. Here, however, Andrew was neither a co-defendant, nor has Movant offered evidence that Andrew testified against him.

Similarly, Manning did not jointly represent Movant and Nathan Kobasic. In his affidavit, Manning avers Movant's conviction became final on June 21, 2012, and Manning did not begin representing Nathan Kobasic until August 20, 2012. (Aff. of Manning, Dkt. No. 14 at 5.) This Court's records confirm that Manning first appeared on Nathan Kobasic's behalf on August 21, 2012. This representation took place long after Movant entered his plea, and thus could not have interfered with Manning's professional behavior in securing that plea, as required for the presumption of prejudice to apply. *See Moss*, 323 F.3d at 456.

Further, the Court finds Movant's allegations and innuendo regarding Manning's supposed back-room dealings with the government and his other clients to be wholly incredible and could only be generously characterized as "merely hypothetical" allegations of an actual conflict. *See Moss*, 323 F.3d at 464. In sum, there is no basis in law or fact for Movant's claim that he was prejudiced by an actual conflict of interest.

9

### 2. Manning's Representation in the Sentencing Phase

Movant claims that Manning provided ineffective assistance during sentencing by: (1) failing to argue against a leadership enhancement under U.S.S.G. § 3B1.1; (2) failing to present meritorious arguments regarding mitigating factors under 3553(a); (3) failing to argue against a gun enhancement; and (4) failing to move to suppress evidence. (Br., Dkt. No. 7 at 4.)

#### a. *Leadership Enhancement*

The Initial PSR recommended a four level enhancement for Movant's role in the charged offense. Manning objected, and successfully argued that Movant was not an organizer or leader. The Final PSR recommended a three level enhancement for Movant's leadership role in the charged offense. In his sentencing memorandum and at sentencing, Manning argued that a three level enhancement overstated Movant's culpability relative to his co-conspirators. The Court agreed, and assigned Movant a two level leadership enhancement. Movant offers speculative arguments as to what Manning could have argued to eliminate a leadership enhancement altogether. (Br., Dkt. No. 7 at 10–13.) Review of the sentencing transcript and memorandum, however reveals that Manning argued vigorously on Movant's behalf, and effectively brought his enhancement down from four to two levels. Rather than being prejudiced, Movant benefitted from his counsel's effective assistance, and is entitled to no relief on this ground.

#### b. *Mitigating Factors*

Movant next argues that Manning was ineffective in seeking downward departures under U.S.S.G. § 5K2.0. Specifically, Movant asserts that Manning raised a frivolous argument that prejudiced him by arguing that marijuana should not be treated as a Schedule I drug for sentencing, (Br., Dkt. No. 7 at 19–20), that Manning failed to raise a meritorious argument that Movant was in

a "volatile relationship that caused fear within him and his family" that caused him to be involved in the criminal enterprise, (*id.* at 21–22), and that Manning failed to bring positive character witnesses to testify on Movant's behalf at sentencing (*id.* at 23–24).

The Court did not accept Manning's argument regarding the classification of marijuana as a Schedule I controlled substance. However, Movant cannot show that presenting an argument in good faith—even if the Court rejects it—falls below an objective standard of reasonableness. Neither can Movant show this argument caused him prejudice. Movant has presented no evidence that the Court imposed a harsher sentence upon him merely because Manning raised this argument.

Manning was not ineffective for failing to raise an argument about Movant's volitile relationship. Movant argues that his girlfriend used threats of violence, threats of self-harm, and isolation from his friends and family to keep him in a life that involved using and selling drugs. (*Id.* at 22.) Movant states that during sentencing, "The court . . . stat[es] that the defendant is 34 years old and not 17 and it was time to wake up and take responsibility, yet again, you have a defendant who is being controlled by someone." (*Id.*) This is contradicted by Movant's statement at sentencing that "nobody ever forced me to do this. I took this upon myself." (No. 1:10-CR-20, Dkt. No. 149 at 16.) It is evident by his present arguments that Movant still does not take responsibility for his criminal activity. Movant was not prejudiced when Manning did not present this completely frivolous argument, and is not entitled to relief on this basis.

Finally, Manning was not ineffective for not presenting positive character testimony at sentencing. Manning attempted to have Movant's mother testify on his behalf, but this Court was satisfied with the information provided on Movant's family and character in letters it had received. (*Id.* at 15.) Manning did not fail to attempt to elicit positive character testimony and Movant was not

11

prejudiced, as the Court took the same information contained in letters into consideration in giving Movant his sentence. (*Id.* at 22–24.) Movant is not entitled to relief on this basis.

    c.     *Gun Enhancement*

Movant argues that Manning was ineffective for withdrawing his objection to the weapons enhancement at sentencing. Movant avers that he "agreed to accept a plea agreement based on an agreement between him and his attorney." (Br., Dkt. No. 7 at 24.) He asserts that he agreed to plead guilty if Manning would "dispute the weapon enhancement at sentencing." (*Id.*) This alleged agreement was not reflected in the plea agreement Movant signed, and indeed Movant stated to the Magistrate Judge that he had not been made any other promises in exchange for his plea. (Gov't Resp., Dkt. No. 20 at 23–24.) Movant argues that he was "not going to disclose trial or sentencing strategy to the Magistrate Court," and that in any event, strategy discussions are protected by attorney-client privilege (Reply, Dkt. No. 22 at 10–11.) Movant also argues that if Manning had moved to suppress the gun evidence in the first place, he would not have faced the enhancement. (Br., Dkt. No. 7 at 30.)

As an initial matter, the Court notes that the breach of an alleged secret agreement to fight the gun enhancement would not entitle Movant to § 2255 relief. Viewing the argument in a light most favorable to Movant, it appears to the Court that he is arguing that he would not have pled guilty had Manning not promised to fight the gun enhancement. In this context, a movant demonstrates prejudice by showing a reasonable probability that, but for counsel's errors, he "would have insisted on going to trial." *Hill v .Lockhart*, 474 U.S. 52, 59 (1985). Here, Movant has not argued that he would have insisted on trial, but rather used the alleged agreement as a basis for arguing that Manning was ineffective for withdrawing his objection to the drug enhancement.

12

As to the gun enhancement itself, Manning's withdrawal of his objection does not constitute ineffective assistance of counsel because it did not fall below an objective standard of reasonableness. A weapons enhancement is appropriate where the government shows by a preponderance of the evidence (1) actual or constructive possession of a weapon; and (2) possession of the weapon during the relevant conduct. *United States v. Parker*, 546 F. App'x 537, 540 (6th Cir. 2013) (internal citations omitted). "If the government demonstrates both these elements, the enhancement should be applied 'unless it is clearly improbable that the weapon was connected with the offense.'" *Id.* (quoting U.S.S.G. § 2D1.1). "Relevant conduct under the sentencing guidelines includes 'all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Faison*, 339 F.3d 518, 520 (6th Cir. 2003) (quoting U.S.S.G. § 1B1.3(a)(2)).

Here, Movant does not dispute the fact that he possessed dangerous weapons prior to and after entering the conspiracy. Nor does he dispute that such weapons were located at his home, a place where transactions related to the drug conspiracy took place. Because the gun enhancement clearly applied, Manning was not constitutionally ineffective for withdrawing an objection to its application.

   d.  *Suppression of Evidence*

Finally, Manning was not ineffective for failing to move to suppress the gun evidence. Law enforcement officers discovered one gun owned by Movant when searching his camper at his arrest. There is nothing in the record to suggest that Movant did not consent to the search. Therefore, moving to suppress this evidence would have been futile, and Manning's representation was not objectively unreasonable for failing to do so.

3.        <u>Post-Conviction Representation</u>

Movant attempts to argue that Manning's representation after sentencing was ineffective because "counsel should have filed a motion to compel the US Attorneys office to file a Rule 35 motion" for Movant's cooperation. (Br., Dkt. No. 7 at 17.) Contrary to Movant's contention, Rule 35 vests power in the government to file a motion to reduce a sentence if a defendant has "provided substantial assistance in investigating or prosecuting another person." Fed. R. Crim. P. 35(b)(1). The briefing of both parties demonstrates that Manning went to great lengths to convince the U.S. Attorney's office to file a Rule 35 motion on Movant's behalf. Its failure to do so cannot be imputed to Manning as ineffective assistance of counsel.

**C.    Ineffective Assistance of Appellate Counsel**

Movant argues that Manning was incompetent to appeal his case because he consulted with other attorneys about appellate procedure and strategy and because he chose to argue certain issues while passing on others (Br., Dkt. No. 7 at 31–34.) Claims of ineffective assistance of appellate counsel are evaluated under the two-prong standard of *Strickland*. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). In the context of appellate cases, the Supreme Court has stated, no "decision of this Court suggests . . . that the . . . defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to press those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Therefore, the mere fact that Movant now believes that his appellate counsel should have raised an issue or legal argument that was not raised does not demonstrate that counsel was ineffective or that Movant was prejudiced.

**D.     Issues Not Cognizable on a § 2255 Motion**

Finally, Movant argues that Manning violated the Criminal Justice Act (CJA) by accepting payment from Movant's step-father and from the government at the same time. (Br., Dkt. No. 7 at 34–38.) Manning argues that these fees were for extra services Manning provided that are outside the scope of CJA representation. The government argues that even if Manning violated the CJA, such is not a cognizable claim on a § 2255 motion. This Court agrees, and notes without deciding that although accepting a fee from a family member for "extra" representation does raise the appearance of impropriety, Movant has not demonstrated that the services Manning provided and that Movant's step father paid for, somehow prejudiced him under *Strickland*. Movant is therefore entitled to no relief on this basis.

### III.

Having determined that Movant's arguments do not merit granting his motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him, this Court may also determine whether to issue a certificate of appealability on these constitutional claims. *See Castro v. United States*, 310 F.3d 900, 901-03 (6th Cir. 2002).

A certificate of appealability should issue if the Movant has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, a district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the United States Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.* Consequently, this Court has examined Movant's arguments under the

*Slack* standard.

To warrant a grant of the certificate, "the [Movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. The Court holds that reasonable jurists could not find this Court's assessment of Movant's arguments debatable or wrong. Therefore, the Court denies Defendant a certificate of appealability as to each issue presented.

## IV.

For the foregoing reasons, the Court denies Movant's § 2255 motion and denies a certificate of appealability as to each issue raised.

The Court will issue a Final Order and Judgment consistent with this Opinion.


Dated: <u>April 29, 2014</u>　　　　　　　　　　　<u>/s/ Robert Holmes Bell</u>
　　　　　　　　　　　　　　　　　　　　　　　ROBERT HOLMES BELL
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE